This case involves a permitting scheme that distinguishes between 24 different categories of speech based in part on the content of the speech. Other categories of speech, including but not limited to electronic changing signs, as well as landmark signs, determine what signs are allowed and what are not. Landmark signs are prohibited by using standardless discretion and not narrow objective and definite criteria. Is there any part of this ordinance or regulation that is not neutral based? I'm asking is there and if there is not, what part is not neutrally based? The ordinance has a scheme of 24 categories of which some of them are based on physical characteristics and some of them are based on the content of the speech. And like in Reed, you need to look at all the categories because some categories are treated more favorably based on the categories of speech and it was determined that the church's proposed sign didn't fit any of those more favorable categories. Isn't Reed pretty different though because here you're not one of the disfavored categories. All electric signs are banned. Incorrect. In Reed, the church was looking to have a directional sign. And the court compared how the directional sign was treated less favorably than political signs. But there was no separate category within directional signs. Just in this case, okay, the church has determined to request an electronic changing sign which is treated less favorably than political signs or construction signs. You're missing the point, I think. In a content-based challenge, I obviously have to be able to point out that some other type of speech is treated more favorably than mine. Correct. Now, is any electronic sign treated any more favorably than any other electronic sign? That is where the town and I disagree. I think if you look at the ordinance, okay, you need to make a determination as to which category the proposed sign fits most nearly. And if you have electronic signs saying Trump for president, that fits the definition of a political sign because it's advocating for the election of a particular candidate, whether it's electronic or not. So your argument depends on us concluding that some electronic signs based on their content are permissible. That is one part of my argument. If you're wrong about that, and we just construed that's just a question of how to construe the ordinance. If the ordinance instead treats all electronic signs equally, regardless of the message on the sign, can you win? Yes. How? Under intermediate scrutiny, the town has the burden. But just so I'm clear on that, if all electronic signs are treated the same, then you concede we don't treat it as content-based. If all electronic signs are treated the same, and the electronic sign provision is an objective, definite standard, whether something is electronic or not, it doesn't have unbridled discretion, such as language included but not limited to. Then it would be treated as content-neutral. Then it would be treated as content-neutral. And the only way that you're contending that we would treat it as content-based is if we read the ordinance to permit those categories of signs that are based on their message without reference to it being an electronic sign favorably to override the prohibition on electronic signs. Correct? Correct. If we disagree with that, then we would just, assuming we don't think there's unbridled discretion, then we just look at it as content-neutral and we apply intermediate scrutiny. I want to make sure the court understands that in addition to things such as political signs, there are speaker-based exemptions, such as for governmental speakers, both through the state statute as well as through the ordinance itself, which allows a speaker-based exemption as long as the content is for public announcements. And does that speaker-based exemption for public announcements, you're just construing the ordinance to override the electronic sign restriction because their contention is that that's wrong. Even governmental speech, if it's not ordered by the state, can't be effectuated through an electronic sign under the ordinance. I don't believe that's the town's argument. I believe the town's argument is that the particular governmental exemption in the ordinance is only for temporary limited amounts of time and that because it's only for temporary limited amounts of time, that it somehow creates a different standard because the church is looking for a permanent sign. I don't think that that is particularly relevant, that the ordinance's governmental exemption is for a temporary amount of time. So your position is under the ordinance, the government, not because of state law ordering it, even if there was no state law requirement, that the town could allow a temporary electronic sign so long as it's the town is the speaker or the government is the speaker, but no other speaker is given that privilege. Correct, and that there are other electronic signs, including neon signs, as well as portable trailer electronic signs, holiday lights, which are all treated more favorably. Is the holiday lights provision written as holiday lights or is it written as lights? It has the word holiday in it. It does? Yes, it does. And the holiday lights provision, as well as the neon sign provision, all goes to electronic changing signs actually needing to be changing signs and not just something. You don't contend neon signs as content-based, do you? No, no. Do you contend holiday signs as content-based? Did you argue that? I did not focus on holiday signs being content-based. So the only content-based distinction with respect to electronic signs that you've identified, you claim is the provision for temporary governmental signs. And the state governmental exemption and the eight categories, such as political, for sale, for rent, so on and so forth. I'm sorry, but this regulation I'm at this point trying to find, where exactly is it that you say this regulation establishes that the prohibition regarding electronic signs is content-based? Sure, the prohibition against electronic signs is content-based because there needs to be. Just tell me what you know offhand what provision it is so I can read it again. I don't remember seeing anything that reminded me of content, so that's why I want to read it again to make sure that I'm not asking facious questions. The 24 categories of signs are found in the appendix starting on page 58. Okay, and then going, it looks like in the appendix through page 70. And you have those 24 categories of signs, okay, some of which are based on physical characteristics and some of which are based on the content of the message. But they contend that the proper reading of the ordinance is that all of those are subject to the electronic sign ban. They contend that the electronic sign provision category trumps all other categories. Correct. Okay, so if we agree with them on that, you don't have any content-based problem. Other than governmental exemption. Okay, where's the governmental exemption, just so I can find that. Sure. Public service signs are 14363P, and P is found on page 65 of the appendix. Okay. I think what makes this case rather easy. Could you just read it, Tim, just so I can understand what the argument is? Sure. Temporary governmental agency signs which carry public service announcements and notices may be permitted to exceed the dimensional requirements of this ordinance and shall be permitted by special exception for a specified limited amount of time. Why didn't that suggest it overrides the electronic sign ban? Because it is permitted to exceed the dimensional requirements of this ordinance. Is the electronic sign thing a dimensional requirement? Yes, that's exactly what the title is before, on appendix 58, dimensional table of signs. And the prohibition against electronic signs in the limited office district is the dimensional table of signs. So the temporary governmental agency is a trump on the other categories, is the fair reading of the ordinance. Now it's important to remember that the town has specifically conceded that traffic safety is not advanced by application of this ordinance to the church's proposed sign. And this is an as-applied ordinance, and the town having conceded that traffic safety is not being advanced, the district court was wrong to look at the general purpose of the sign ordinance as a whole and to construe that there must be some traffic safety interest there because there's a general purpose statement. Where the town conceded that traffic safety is not advanced, the district court erred in looking to a general purpose statement. Second, the district court erred in not finding the ordinance to be a prior restraint because of the unbridled discretion. And there's two parts where the unbridled discretion was actually applied against the church. First, the town determined that this was not a landmark sign, which could be of any size, as long as the town determined that it had extraordinary significance to the town. If the town is given the power to determine an exemption for landmark signs that have extraordinary significance, that's a pretty clear unbridled discretion case. In addition, the definition of electronic changing signs itself includes but is not limited to signs that scroll, flash, et cetera, things which the church's proposed sign will not do. The district court relied heavily on the NACER case, which is not applicable for the reasons as stated in the brief. I just want to make clear that one of the things about the NACER case is that was to a facial challenge. NACER made clear it was a facial challenge. NACER 2 was the as-applied. And in a facial challenge, it may be appropriate to look at the general purpose statement of the ordinance. But this, where it's an as-applied challenge, it's wrong to rely on NACER for that purpose. Instead, the court should be looking to cutting and write-out. Finally, I think it's important to remember for my times up here that the town has the burden. The town has not introduced any reason why the church's sign is less aesthetically pleasing than signs that it does allow. The town's argument is that if the church has a sign, that all of a sudden others will request signs in the future. That type of hypothetical possibility was expressly rejected by this court and write-out. I'm curious. What kind of evidence would be relevant to establishing whether something is aesthetically pleasing or not? I mean, it sounds like a pretty difficult thing to prove one way or the other. It is a difficult thing. It's in the eye of the beholder, as I would think. I agree completely it's in the eye of the beholder. The cases which deal with the aesthetics the most are those cases that look at the signs which are allowed and those signs which are not allowed. And if there's no aesthetic difference, such as in the county of Alameda case, there's no aesthetic difference between the governmental signs allowed and the private signs not allowed, then the town's asserted aesthetic interest is not actually being advanced. But here, of course, the town's not even asserting aesthetic interest for the church's proposed sign. They're asserting in their brief that if the church is allowed a sign, there'll be other sign requests in the future that would be indistinguishable from it, and they'd have to approve. Can I just go back to this point about how to read the ordinance? So you say the dimensional table of signs, but the dimensional table of signs doesn't set forth dimensional requirements. The dimensional table of signs has what the size can be and then it has what zones it's allowed at. And if you look at the LO, which is the second column from the right, that's the limited office district. And if you go down to electronic changing signs, there's C1 and there's a P. I don't know what that means. In the commercial district, they're permitted. In the limited office district where you have that blank line, they're not permitted. But what I'm saying is that that's all true, but nothing in this says that the electronic changing sign requirement is a dimensional requirement. And yet the exception you're pointing to says temporary government agency signs which carry public service announcements and notices may be permitted to exceed the dimensional requirements of this article. And I just don't see where in the article it describes an electronic changing sign as a dimensional requirement. Are you saying just because it's listed in the dimensional table of signs, it itself is a dimensional requirement? Because you look at the other lists, like minor home business, that's a dimensional requirement? It just doesn't make sense textually. There are a lot of things, quite frankly, Your Honor, in this ordinance that don't make sense. Which means why wouldn't we just defer to the town's reading of it, which it's telling us that the electronic sign ordinance doesn't have a carve out for this. Are you saying that the town argues that the electronic sign ordinance does have, the town is of the view that it's allowed to put up a temperamental government agency sign that's electronic and changing? The town's code enforcement officer testifies in the deposition that he made a determination as to which category most nearly applied by reading the sign and by then using his common sense and good judgment. And I've quoted in my brief where he says those particular words. After that deposition, he then provided an affidavit to the court where he stated something different. Where he stated that an electronic changing sign is a trump of the other categories. But during his deposition he said he just used his common sense and good judgment by reading the sign. Excuse me, am I correct that in the commercial district electric signs are allowed? Correct. Am I also correct that the zoning prohibits churches in the commercial district? Correct. Is there any explanation as to why that is? There's not an explanation that I'm aware of, but the zoning district does allow all sorts of non-religious assemblies including non-profit assemblies. And so while there have been some cases where towns have kept out tax-exempt uses, the only tax-exempt use kept out of the commercial district in Pembroke are houses of worship. And you're not challenging that here? The fact that they're only allowing churches to be located in districts where electronic changing signs are not permitted is a part of my argument, yes it is. No, but you're not challenging the right to exclude the church under RELUPA or Establishment Clause of Free Exercise or anything like that? It is an equal terms violation to prohibit churches from... You're not bringing that challenge here, you're only challenging it vis-a-vis electric sign usage. Vis-a-vis electric sign usage, churches are not allowed anywhere where electric signs are allowed, therefore it's an equal terms violation. May it please the court, my name is Chris Cole. I represent the town of Pembroke along with my co-counsel Dan Mullen from the firm of Ransomire and Spelman. This case arises from, procedurally and factually, from a really, really narrow set of facts. That is, the church came to the code enforcement officer and said, we'd like to erect this type of sign, a sign with this type of functionality. And the code enforcement officer said, looking at the table that's been mentioned by your honors, you went down this list and he said, yeah, that's not allowed in your district. Then there was an administrative appeal, a request for a variance from this very provision. Those were denied by the ZBA and this action followed. It really is that simple. The church never sought to relocate in the commercial district. The church never sought to avail itself of any exemption, which I think is what takes this case out of read as such. The church... What about the temporary governmental sign point? Is it your view that you can do a temporary governmental sign that's electronically changing or that you can't? That we can't. That you can't. The electronic sign ordinance exists sort of in a freestanding silo, your honor, if that answers your question. That's the way we look at it. That's the way the town has... Nothing in the record shows that you've ever put up an electronic governmental sign other than by order of the state. The only electronic sign put up is the one at the school administrative unit, subdivision of the state, over the town's objection. You can find the permit. I can find the permit for you in here. And you'll see scribbled on the bottom of the permit or written on the bottom of the permit, not allowed in this district. Because they thought this was important. These... Can I ask you one question before you go too far just so I understand? How do you come up with this? Is there like a model sign ordinance that people use? I don't know the answer to that question. There's an enormous amount of time and energy on signage. Well, I think, yeah, we do. All towns do for the purpose of evaluating the extent to which they're going to allow, I'm going to call it, visual clutter. Because I think that's what it is. When town meeting in New Hampshire, these are adopted through a super democratic process called town meeting. The chief judge may remember this. But a town comes in, it files a warrant article that says, we'd like to change our ordinance to do this. And here's why. And it utters the reasons why. And the reason why we adopted this way back when, in 2012, was in order to allay some traffic concerns of the sort of, the visual noisiness of these things as you go past them. But more importantly, to retain an aesthetic character of a New England village. If you were to drive, and the federal district judge would have known this, if you were to drive along Main Street in Pembroke and then yielded to Main Street or the street that follows in Hooksett, you would have seen the demise of a local town in Hooksett that didn't have this sort of zoning. We caught this in time with a single non-conforming user. After all of this time, a single non-conforming user. Also out of our hands at that point under RSA 674-19 and the constitutional provisions that buttress reliance, interest, and property rights. Is the holiday lights exception content-based in your view, or is it just not in the case? It's not in the case. I'm loathe to give you an answer that it is or isn't content-based because it's never appeared in the case. What appears in the case is a request to put up an electronic message center or an electronic changing sign. And what we've seen throughout is that that has caused the morphing of the argument on behalf of the appellant to consider the whole thing as a prior restraint. This is not Van Wagner. This case is not Van Wagner. Van Wagner had reposed in a single director of outdoor advertising or something like that the sole authority based on sort of how it fit with the environment and how it was treated with the general welfare. This is not discretionary. This table says in a single district you're allowed to have them, but in all of the others we've decided to eliminate this sort of odious sign. And that's all the case is really about. Although it's not part of this case apparently, why wouldn't the church be allowed to do this in the commercial district but not in other districts? Well, I'm just going to give you what I think is my opinion on that so long as we know that. The commercial district is for developing a taxpayer base among commercial entities. It's unlikely that any town, not just this town, but any town would want to have a tax-exempt entity in the district. I believe the record does include the fact that there are two religious assemblies in the commercial district. They got there by variance, and guess what they can do? They can put up an electronic sign because they're in the commercial area. Do they have commercial signs? I mean, do they have electronic signs? I don't know, Your Honor, the answer to that question, but I can tell you that there's been no request for this landowner to move to that part of the town. And so this is what the federal district judge says. He basically says there's no standing here to attack. I think standing is a good filter to find out what facts are germane to what we're doing here today. He says the appellant has essentially a fatal traceability problem when you look at the exemptions and when you look at the commercial district because this appellant, anyway, never availed itself or didn't want to avail itself of that. It wanted, in the LO district, where there's no P, to erect a type of sign. Then the question becomes is the sign definition itself, and this is page 67 of the appendix, the electronic changing sign, is it precise enough? Is it definite enough? And the court ends up saying that it's plenty definite enough. It has specific contours related to specific coherent functionality and that this sign clearly, and I think there's no question about it, this sign clearly did fall into it. So I think standing is the first sort of prism through which the court needs to see this case. Then it gets to content neutrality. Then it goes through the three factors under McClellan and its history. I'm happy to answer your questions. So I have a question on one of your RLUIPA arguments. The way I understood the argument, it was essentially that the state statute provides for a zoning exemption, for example, for the school. Sure. But I thought the cases treated state statute and local ordinance as a piece, as of a kind, when it came to whether there was equal treatment under that regulatory regime. And so I'm not sure how far that would get you. I guess if you peel back the onion a little bit, you could say, well, the state statute for exemptions on zoning for government entities, government buildings, is a legitimate basis for distinction. But that wasn't the argument, as I read it. The argument was simply that the state statute requires it or permits it. There's a lot of cases under the statute that suggest that actors who avail themselves of separate legal regimes are not similarly situated comparators, so-called. And you'll see in the federal district judge's opinion, he goes through why it could be and why not. The governmental exemption under RSA 674-54 is not an appropriate manner of comparison to this. The statute says that no government shall, and this is a local government, it never imposed its local land use regulation in any way that differentiated anybody. It has a nonconforming user over whom it has no authority because there's a constitutional dimension to that person's rights, and they can't be changed or forced to change. And there is an exemption, state statutory exemption, for government actors, for their own carrying out of their own unfettered sort of needs, putting in a fire station where they think they need it, even if that fire station exceeds a height requirement or a height limit under the zoning ordinance. I think what the judge is saying is that if you were to call the government exemption a sufficient comparator, then churches would essentially have a privileged position under the statute, under ALUPA, because they would be able to parrot in every zoning district across the country that which government does sometimes, oftentimes, in violation of local land use regulation. Isn't that getting to the point about whether it's a legitimate distinction? I don't understand your question, Your Honor. Well, one way to explain why you're right would be to say, and that shows that it's legitimate to distinguish between the government and non-governmental actors. But I thought Chief Judge Howard's question was whether we even get to that question, because your argument is we don't get to that question because the source of the distinction is the state rather than the local government. That is our argument. So even if it's an illegitimate distinction, it's irrelevant. Yeah, I don't think it's an illegitimate distinction. But your argument makes it so that we have to assume it's illegitimate. Yes, Your Honor. Okay, so how can you defend it? How can I defend the legitimacy of the distinction between the government exemption? How can you defend a position in which the relevant comparator, which the distinction can be illegitimate so long as the state rather than the local government is imposing it? That's what you're asking us to do. I don't think I'm asking you to do that, Your Honor. I don't think I'm asking you to look at the legitimacy of what they do. What Judge Barbadaro said was that the government can carry out these activities, that it's an ordinary exercise of the police power, and it's permitted to. And if we are to bootstrap our LUPA to allow religious assemblies to do whatever it is that government assemblies will do, or that governments will do, then you have a statute that's out of whack with this. Simple question. Suppose the state here said only people that have political messages can do the signs. Suppose the state here said this? Yeah. Is your position that there is a LUPA problem or there is not a LUPA problem? If the state were a participant at this table, which it's not, and it said. Right. I know the case says it is now. The state's not in it. Right. Your position is they can't sue you for that, right? That is my position. Right. So it doesn't matter how legitimate the distinction is or not because if there's a violation, that's got to be brought against the actor who does the illegitimate thing. Yes, Your Honor. Okay. As I read this regulation, there's an exception also for current time or temperature signs that I assume are electronic. Yes, Your Honor. I think there are. I'm not sure that was involved in the case either. Well, doesn't that create an exception also? I don't think so, Your Honor. Why not? Because nobody, there's a standing issue with that. You can't attack a provision that is not fairly traceable to your purported injury. No, that's not right. If it's an electronic changing sign, they're injured because some people who do electronic changing signs get better treatment than they do. Right. Maybe they just didn't raise that argument and so it's waived. They didn't raise that argument. Okay. Thank you. Thank you. First, Your Honors, we did raise the argument that the exemption for time and temperature, both in the motions for summary judgment below as well as in the brief, that was on the laundry list of different exemptions. Did you mention the brief on appeal? Yes. Yes. On the laundry list, I believe there's maybe 10 different exemptions. We didn't discuss it in any detail. Political signs, time, temperature, all of those were mentioned in the brief. But it's, quite frankly, a laundry list of different content-based. The time and temperature the town concedes is an electronic changing sign? That's what I just heard, Your Honor. Yes. And it makes sense. I believe I have a footnote in my brief saying that it has to be an electronic changing sign because it changes every minute. Was that discussed by the district court? It was not discussed by the district court. It was mentioned in our motion for summary judgment. But in your brief to us, you don't highlight that or mention it? You just have it in the list and you don't even, I don't know. You just list it with all the other? With the other 10 content-based exemptions. You're right, Your Honor. Which are not then further defined, distinguished between electronic and non-electronic. Well, just like Judge Barbaro said that the political favoritism isn't relevant because the church didn't want to espouse a political message, the church doesn't want to espouse a political message. He said that because it is not trumping the electronic sign ordinance. Now the argument is there is a content-based distinction that does trump the electronic sign, and that's time and temperature. But nothing in your brief gives any indication that you view it as any different than any of the other content-based restrictions. And now all of a sudden we're supposed to decide there is this special one. But there's no argumentation to us about that until just this second. That is absolutely correct, Your Honor, that I argue in my brief that all of the content-based distinctions are all content-based distinctions. I don't put any special emphasis on that one. Okay. I want to make sure the Court understands that the Ackerley case, this First Circuit case, made clear that the state and local ordinance needs to be interpreted together for First Amendment purposes, and likewise it should be interpreted together for RLUMA purposes. Can I just ask about that? Who is supposed to get sued? Take my example where the state imposes a plainly discriminatory distinction. The local government didn't have anything to do with it. They have a content-neutral ban, and the state comes in and does something really unfair. You can sue the town? This very issue was brought up below. It wasn't raised on appeal, even though the district court ruled in our favor, because I argued that it is only the town that is prohibiting the church from speaking. The town is not challenging that the government is being allowed to speak. The church is only challenging that itself is not being allowed to speak, and that is being done by the town. So the idea is that the town has to take cognizance of the state's distinction and remedy it, basically? It's the same thing as in Ackerley v. Cambridge, that the town could either let the church speak or the town could petition the state in order to get the state to amend their ordinance. I think it's important to remember in this case that the town has amended its ordinance in March of 2017, so a facial invalidity of the Pembroke signed ordinance as applied against the church or just an as-applied invalidity of the Pembroke signed ordinance actually only applies to the church's request for the particular sign it issued in this case. There are out-of-circuit cases that support your view on this, are there not? Absolutely. The 4th Circuit, the 11th Circuit, as well as Northern District, California. 7th Circuit. 7th Circuit as well. Thank you for the Chicago Realtors case. Thank you, Your Honors. Thank you both.